THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUCIA GARCIA, *et al.*,<br>    *Plaintiffs*,<br><br>v.<br><br>MUNICIPIO DE SAN JUAN AND<br>SAN JUAN MUNICIPAL<br>HOSPITAL, *et al.*,<br>    *Defendants.* | Civ. No. 22-01307 (MAJ) |

**OPINION AND ORDER**

**I.    Introduction**

Before the Court is a Motion to Dismiss, brought by Defendants Dr. Luis E. Cintrón-Ortiz and his insurer, Puerto Rico Medical Defense Insurance ("PRMDI"), (collectively hereinafter "Defendants") concerning a medical malpractice claim filed by Plaintiffs, Lucía García, *et al.*, ("Plaintiffs"). (**ECF No. 62**). The case stems from allegations that Mr. Jesús García ("Mr. García") received negligent treatment at the San Juan Municipal Hospital ("Municipal Hospital" or "Hospital") between June 23, 2021, and July 4, 2021. (**ECF No. 27**). Plaintiffs allege that the actions and omissions of Dr. Luis Cintrón ("Dr. Cintrón"), among others, caused Mr. García's death.[1] *Id*.

Defendants, in their Motion to Dismiss (the "Motion") under Fed. R. Civ. P. 12(b)(6), argue for dismissal based on statutory immunity pursuant to Article 41.050 of

---

[1] According to Plaintiffs, the insurer PRMDI, "had in full force and effect an insurance policy covering" Dr. Cintrón's legal liability when he provided treatment to Mr. García. (**ECF No. 27 at 6**).

the Puerto Rico Insurance Code. (**ECF No. 62**). For the reasons stated hereafter, Defendants' Motion is **DENIED**.

## II. Procedural Background

On March 16, 2023, Defendants filed the instant Motion. (**ECF No. 62**). Several weeks later, Plaintiffs submitted their Response in Opposition (the "Opposition") to Defendants' Motion. (**ECF No. 73**). Defendants then filed a Motion to Strike Plaintiffs' Opposition, and in the Alternative, as a Reply to the Opposition. (**ECF No. 77**).[2] Finally, Plaintiffs countered with a Sur-Reply. (**ECF No. 81**). The Court has considered these pleadings, along with Plaintiffs' Second Amended Complaint (the "Complaint"), in reaching its decision. (**ECF No. 27**).

## III. Factual Background

The Complaint alleges that from June 23 through June 24, 2021, Dr. Cintrón rendered medical treatment to Mr. García at the emergency room of the Municipal Hospital. (**ECF No. 27 at 8**). On June 23, 2021, Mr. García, experiencing chest pain and shortness of breath, sought emergency care at the Municipal Hospital. *Id.* Dr. Cintrón, the attending Emergency Room physician, evaluated him shortly after midnight. *Id.* He administered bronchodilator therapy, supplemental oxygen, and ordered lab tests. *Id.* By 2:56 a.m., following a diagnosis of COVID-19, pneumonia, and hypoxemia, Dr. Cintrón requested the assistance of internal medicine specialists. *Id.* at 9. The Complaint asserts Dr. Cintrón negligently treated Mr. García by failing to appropriately address acute coronary syndrome. *Id.* at 17-18, 32.

---

[2] The Court will deem Defendants' Motion to Strike simply as a Reply to Plaintiffs' Opposition (the "Reply to Plaintiffs' Opposition"). (**ECF No. 77**).

## IV. Standard of Review

### a. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

When addressing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), district courts should "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021). Following the principles laid out in *Bell Atlantic v. Twombly*, a plaintiff must substantiate their entitlement to relief with more than mere "labels and conclusions." 550 U.S. 544, 555 (2007).

This requires enough factual material "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). Consequently, allegations must "nudge [the] claims across the line from conceivable to plausible," adhering to Rule 8(a) standards. *Twombly*, at 570; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

When considering a motion to dismiss, the Court's analysis occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly* and *Iqbal*. First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements, and factually threadbare recitals of the elements of a cause of action. *Iqbal*, at 678; *Mead v. Independence Ass'n*, 684 F.3d 226, 231 (1st Cir. 2012) ("Any statements in the complaint that are either legal conclusions couched as facts or bare bones recitals of the elements of a cause of action are disregarded.").

In the second step of the analysis, the Court must determine whether, based on all assertions not discarded in the first step, the complaint "states a plausible claim for relief."

*Iqbal*, at 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted or, instead, whether dismissal under Fed. R. Civ. P. 12(b)(6) is warranted. *Id*.

To survive a motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim for relief. *Doe v. Stonehill College, Inc.*, 55 F.4th 302, 316 (1st Cir. 2022). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal*, at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id*. at 682 (citing *Twombly*, 550 U.S. at 567).

The First Circuit has warned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010); *Ocasio-Hernández*, 640 F.3d at 12.

A complaint, however, hinging on "bald assertions" and "unsupportable conclusions" is unlikely to survive such a motion. *Alston*, 988 F.3d 564 at 573. Similarly, merely reciting the elements of a cause of action without specific supporting information, bare factual assertions as to the elements of the cause of action, and pure speculation are also inadequate. *Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592 (1st Cir. 2011); *Wetmore v. MacDonald, Page, Schatz, Fletcher & Co., LLC*, 476 F.3d 1, 5 (1st Cir. 2007).

## V. Statutory Immunity under the Puerto Rico Insurance Code

The Puerto Rico Insurance Code grants immunity from suit to any health care professional, whether an employee or a contractor, acting within the scope of his/her duties as an employee of the Commonwealth of Puerto Rico while performing institutional duties. *Muñoz-Vargas v. Laguer*, 14-cv-1597, 2016 WL 406345, at *2 (D.P.R. Feb. 2, 2016). Article 41.050 of the Puerto Rico Insurance Code, commonly referred to as the Medical-Hospital Professional Liability Insurance Act (the "MHPLIA"), P.R. Laws. Ann. tit. 26, § 4105, provides in part that:

> [n]o healthcare professional (employee or contractor) may be included as a defendant in a civil action for damages because of culpability or negligence arising from professional malpractice while said healthcare professional acts in accordance with his duties and functions, including teaching duties, as an employee of the Commonwealth of Puerto Rico . . .

*Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc.*, 21-cv-1609, 2023 WL 6976566, at *4 (D.P.R. Oct. 23, 2023).

The MHPLIA contains three fundamental requirements for immunity to apply to the health services professionals that work for the government, its dependencies, and instrumentalities, namely:

> (1) the person who furnishes the [health] service must be a health care professional; (2) the harm caused by his/her actions must have taken place in the practice of his profession; and (3) he/she must have acted in compliance with his/her duties and functions as an employee of the Commonwealth of Puerto Rico, its agencies, instrumentalities, and/or municipalities.

*Hall v. Centro Cardiovascular de Puerto Rico y del Caribe*, 899 F. Supp. 2d 106, 111 (D.P.R. 2012); *see also Hosp. San Antonio, Inc. v. Oquendo-Lorenzo*, 47 F.4th 1, 10 (1st Cir. 2022) (P.R. Laws Ann. tit. 26, § 4105 immunizes healthcare professionals from malpractice claims who work at a qualifying government facility).

The First Circuit has held that for the immunity provision to apply, the healthcare professional must have been acting as a government employee at the time he/she committed the allegedly negligent acts. *Frances-Colón v. Ramírez*, 107 F.3d 62, 64 (1st Cir. 1997); *Vázquez-Negrón v. E.L.A.*, 113 D.P.R. 148, 151 (1982); *Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc.*, 21-cv-1609, 2023 WL 6976566, at *4 (D.P.R. Oct. 23, 2023).

In *Rivera Rosa v. Centro Más Salud Dr. Gualberto Rabell, Corp.*, the pivotal issue before the Court was whether the immunity provisions of Article 41.050, traditionally reserved for healthcare professionals, could also shield the defendant corporations that provided health services as independent contractors to a municipal hospital. 18-cv-1953, 2021 WL 3025135, at *4 (D.P.R. July 16, 2021). There, the defendants asserted that "the immunity provided by statute is applicable to corporations," thus entitling them as "legal persons" to the statutory immunity. *Id.* at 4. The plaintiff contested the defendants' eligibility for immunity, contending it applied to "natural persons" and that "[n]owhere in the law is immunity granted to . . . corporate institutions." *Id.* at 3.

Aligning with the plaintiff's view, the Court found that the "immunity afforded to certain **healthcare professionals** under Article 41.050 does not encompass corporate entities."[3] *Id.* at 4. (emphasis added). The Court reasoned the legislative intent underpinning Article 41.050 immunity "is a response to public policy considerations that surpass any act or omission of the **individual** that is protected by it." *Id.* (emphasis added). Conclusively, the *Rivera Rosa* Court denied the defendants' motions for summary

---

[3] Notably, previous Courts have found the language of Article 41.050 and its respective amendments to be "clear," "unambiguous," and fully enforceable. *See Muñoz-Vargas v. Laguer*, 14-cv-1597, 2016 WL 406345, at *2 (D.P.R. Feb. 2, 2016); *see also García v. Municipio De San Juan*, 22-cv-01307, 2023 WL 2024992, at *4 (D.P.R. Feb. 15, 2023).

judgment, concluding, "Codefendants cannot be considered healthcare professionals, nor can they be encompassed within the meaning of an independent contractor." *Id*. at 5. The Court emphasized, "[a] ruling on the contrary would be tantamount to impermissible judicial legislation."[4] *Id*.

## VI. Analysis

Defendants largely miss the central issue of whether a physician provided by a corporate entity to a municipal hospital enjoys Article 41.050 immunity. *Rivera Rosa,* at 4 (citing *Colón v. Ramírez*, 107 F.3d 62, 63 (1st Cir. 1997)) ("it only needs to be established that the individual was acting as a government employee at the time of the event that gave rise to the claim."). Here, the Court finds no reason why it should stray from applying the reasoning provided in *Rivera Rosa*, 18-cv-1953, 2021 WL 3025135, at *4. Defendants' Motion asserts immunity under Article 41.050, arguing they are shielded from Plaintiffs' suit. (**ECF No. 62**). They specifically state, "[a]s a contractor fulfilling his role as a medical professional at the Municipal Hospital, Dr. Cintrón-Ortiz provided medical treatment to Mr. García. Under Article 41.050 of the Puerto Rico Insurance Code, this role grants Dr. Cintrón-Ortiz absolute immunity against all medical malpractice claims brought forth in this action." *Id*. at 3. Furthermore, they emphasize, "Dr. Cintrón-Ortiz, acting as an attending physician under an agreement to provide medical care at the Municipal Hospital, delivered medical care to Mr. García. This care, provided during the events in question, fell squarely within the bounds of this agreement." *Id*. at 6.[5]

---

[4] The Court did not address the second and third requirements for immunity because it found that the codefendant corporate entities, could not meet the initial criterion of being considered a "person" under the statute. *Rivera Rosa*, at *4-5.

[5] Additionally, Defendants argue that holding PRMDI liable would require finding Dr. Cintrón liable, which they deem inappropriate due to his asserted immunity from medical malpractice liability under the Act. (**ECF No. 62 at 7**). The Court agrees with this position, as Courts in this District have previously noted,

The agreement referred to is, in fact two separate agreements. The first agreement is between the Municipality of San Juan and On Call Health Care, P.S.C., ("On Call Health"). *See* (**ECF Nos. 62-1; 62-2**). This "Professional Services Agreement" (hereinafter the "San Juan Agreement") states in part, **"**[On Call Health] agrees and undertakes to provide the [Municipality of San Juan] with the necessary medical personnel to render the medical services required to cover the needs in the Emergency Rooms and Urgent Care Room of the Municipal Hospital." (**ECF No. 62-1 at 1**). Moreover, per the terms of the San Juan Agreement, On Call Health, "acknowledges that this Agreement does not make it into an agent, representative or employee of the MUNICIPALITY for any purpose and that it is an independent contractor and shall not be entitled to any fringe benefits accruing to employees of the MUNICIPALITY." (**ECF No. 62-1 at 10**).

The second agreement is also a "Professional Services Agreement" but is between On Call Health and Dr. Cintrón (hereinafter the "Dr. Cintrón Agreement"). (**ECF Nos. 62-3**). As per the terms of this Agreement, Dr. Cintrón acknowledges "the parties create a relationship exclusively for Professional Services, whereby THE PHYSICIAN is an independent contractor." (**ECF No. 62-3 at 4 ¶ 17**).

In response to Defendants' Motion, Plaintiffs' Opposition highlights three key arguments. (**ECF No. 73**). First, Plaintiffs argue that Dr. Cintrón, as a doctor with privileges working for a third party, does not qualify as a contractor of the Municipal Hospital. (**ECF No. 73 at 2-8**). Therefore, they contend that "he is [not] protected by the

---

"that the immunity granted to health professionals also extends to their insurance companies since there is no cause of action against the insured doctor, the insurer is not liable." *Rivera Rosa*, at 5; *Rodríguez-Díaz v. Sierra-Martínez*, 717 F. Supp. 27, 33 (D.P.R. 1989)).

statutory immunity against malpractice claims." *Id*.[6] They reference Dr. Cintrón's description of his role at San Juan Municipal Hospital under a contract with On Call Health, as evidence challenging his contractor status and, by extension, his claim to immunity under Article 41.050 of the Puerto Rico Insurance Code. Second, Plaintiffs dispute the relevance of the Agreement cited by Defendants, arguing it links Dr. Cintrón to a third party, not directly to the hospital, undermining his claim to be a contractor eligible for immunity. (**ECF No. 73 at 2-10**). Third, according to Plaintiffs, even assuming "arguendo" Dr. Cintrón was "an independent contractor," specific criteria must be met for statutory immunity to apply, which they contend Dr. Cintrón fails to satisfy. (**ECF No. 73 at 4-8**).

Defendants have wholly side-stepped this issue in their Motion, opting to characterize Dr. Cintrón's employment "as an attending physician under ***an*** agreement to provide medical care at the Municipal Hospital." (**ECF No. 62 at 2**) (emphasis added). Defendants bear the burden of establishing his employment status and the "[in]existen[ce] of a cause of action." *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998) (explaining Article 41.050 immunity is an affirmative defense; therefore, "defendant bears the burden of establishing its applicability."). The Court, adhering to the principle of party presentation, must "rely on the parties to frame the issues for decision." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). The Court occupies "the

---

[6] Additionally, Plaintiffs' Opposition asserts Defendants have waived any affirmative defenses not raised in their answers to the complaint. Specifically, Plaintiffs contend, "Dr. Cintrón NEVER raised in his Answer a 'statutory immunity' as an affirmative defense" and doing so for the first in the instant Motion "is a prejudicial surprise to Plaintiffs" thus Defendants waived the ability to assert immunity under the MHPLIA. (**ECF No. 73 at 9-10**). However, contrary to Plaintiffs' position, as the First Circuit put it, "the immunity afforded state doctors is not a personal defense but rather the inexistence of a cause of action." *Kenyon v. Cedeño-Rivera*, 47 F.4th 12, 18 (1st Cir. 2022) (internal citations and quotations omitted). Therefore, regardless of the contents of Defendants' answers to the Amended Complaint, immunity is "not waived and can be asserted at any moment." *See Rivera Rosa*, at 4–5.

role of [a] neutral arbiter of matters the parties present." *Id.*; *see also Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., *concurring in part and concurring in judgment*) ("Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.").

Like *Rivera Rosa*, Plaintiff here, too, challenges the extension of immunity to corporations. (**ECF No. 73**). It should be noted, however, that *Rivera Rosa* was resolved at the summary judgment stage, and the present case is being reviewed under Fed. R. Civ. P. 12(b)(6). Moreover, *Rivera Rosa* involved corporate entities themselves attempting to assert immunity reserved for medical healthcare professionals, whereas here, it is a medical health professional asserting immunity.

Despite these differences, the terms of the San Juan Agreement and the Dr. Cintrón Agreement clarify the nature of the relationships involved. Specifically, the San Juan Agreement expressly states that On Call Health is not an "agent" or "employee" of the Municipality, but an "independent contractor" without entitlement to "fringe benefits" of Municipality employees. (**ECF No. 62-1 at 10**). Similarly, Dr. Cintrón's Agreement establishes that the relationship between On Call Health and Dr. Cintrón is purely for the provision of Professional Services, with Dr. Cintrón also classified as an "independent contractor." (**ECF No. 62-3 at 4 ¶ 17**). These terms, along with the guidance from *Rivera Rosa,* foreclose Dr. Cintrón's ability to assume the immunity benefits usually granted to medical health professionals who contract directly with the Municipality. This is because, Dr. Cintrón is not a contractor of the Municipality but has contracted with On Call Health. Since Article 41.050, does not extend immunity over corporate entities—Dr. Cintrón cannot assume the benefit of statutory immunity vis-à-vis

his contract with On Call Health, as that corporation is ineligible for immunity and thus cannot pass along a benefit it does not possess. *See Rivera Rosa*, at 4 ("the immunity afforded to certain healthcare professionals under Article 41.050 does not encompass corporate entities."). Moreover, Defendants have failed to provide any legal support for the proposition that immunity is available to him as a subcontractor when On Call Health, the principal contractor does not qualify for Article 41.050 immunity. *See Childs v. San Diego Fam. Hous., LLC*, 19-cv-2329, 2020 WL 12689448, at *7 (S.D. Cal. Sept. 15, 2020) (underscoring the absence of legal authority to support defendant-contractor from "acquir[ing] the Government's embracive immunity" and thus the contractor was not shielded from suit); *see also Hosp. San Antonio, Inc. v. Oquendo-Lorenzo*, 47 F.4th 1, 11 (1st Cir. 2022) (declining "to look beyond" the clear text of medical immunity statute).

Given the instant Motion's cursory treatment as to the core issue that would establish immunity, the Court relies on Defendants' presentation of the argument to find he has failed to carry his burden that Article 41.050 immunity should apply, when he as a medical professional is not a direct contractor of the Municipality. *See Sineneng-Smith*, 140 S. Ct. 1575 at 1579; *Torres Vargas*, 149 F.3d 29 at 35.

This Court is "mindful of our obligation to faithfully apply the substantive law of Puerto Rico and take our cues from the Puerto Rico Supreme Court with respect to the proper method of statutory interpretation." The Court is even more mindful to avoid legislating from the bench. *See Huntington Nat'l Bank v. AIG Specialty Ins. Co.*, 23-cv-3039, 2024 U.S. App. LEXIS 374571, at *14 (6th Cir. Feb. 1, 2024) (acknowledging a reluctance to engage in policy-making and "legislating from the bench"); *Steiner v. Univ. of S. California*, 16-cv-08081, 2017 WL 11628146, at *5 (C.D. Cal. Feb. 7, 2017) ("it is imperative that judges avoid legislating from the bench"); *see also In re Anheuser-Busch*

*Beer Labeling Mktg. & Sales Practices Litig.*, No. 1:13 MD 2448, 2014 U.S. Dist. LEXIS 76005, at *31 (N.D. Ohio June 2, 2014) (quoting *Harris v. Commissioner*, 178 F.2d 861, 864, 1950-2 C.B. 77 (2d Cir. 1949)) ("It is always a dangerous business to fill in the text of a statute from its purposes.").

Given these considerations, the Court remains unconvinced by Defendants' broad attempt to stretch immunity to encompass physicians by way of their relationship with independent contractor corporations. *Kenyon v. Cedeño-Rivera*, 47 F.4th 12, 20–21 (1st Cir. 2022) (quoting *Quality Cleaning Products R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 207 (1st Cir. 2015) ("A federal court sitting in diversity cannot be expected to create new doctrines expanding state law."); *see also Rivera Rosa*, at *5. Article 41.050 is clear on its application. It only provides immunity to an employee or contractor of the Commonwealth of Puerto Rico. *See García*, 2023 WL 2024992, at *4 (following amendments to Article 41.050, "the legislature's statement of motives noted the amendment served to, 'reincorporate immunity to healthcare professionals who are employees or contractors of the Commonwealth of Puerto Rico, the agencies and instrumentalities thereof … (2013 Puerto Rico Laws Act 150 (S.B. 811)).'").

No part of Article 41.050 extends such immunity to corporations, much less, contractors of such entities. To suggest otherwise and to read into the statute words that simply are not there, as Dr. Cintrón has effectively proposed, would overstep the judiciary's bounds, morphing it into a legislator—a role it neither seeks nor holds. Therefore, Defendants' Motion is **DENIED**. (**ECF No. 62**).

## VII. Conclusion

In accordance with the preceding analysis, Defendants' Motion to Dismiss is **DENIED**. (**ECF No. 62**). Furthermore, the Motion to Strike submitted by Defendants is hereby considered **MOOT**. (**ECF No. 77**).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of February 2024.

*/s/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDÁN**
**UNITED STATES DISTRICT JUDGE**